FILED
2019 Feb-08 AM 09:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEVE J. NEMO, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:17-cv-02130-MHH |
| RR DONNELLEY LOGISTICS SERVICES, | } |
| Defendant. | } |

# MEMORANDUM OPINION AND ORDER

In this discriminatory discharge case, plaintiff Steve J. Nemo alleges that defendant RR Donnelley/Logistics Services (RRD) violated Title VII and the Age Discrimination in Employment Act (ADEA) because RRD based its decision to fire him on his race, gender, and age. (Doc. 1, p. 2). RRD argues that Mr. Nemo cannot pursue a discrimination claim against the company because Mr. Nemo was not an employee of the company. (Doc. 9, p. 1). RRD has asked the Court to either dismiss Mr. Nemo's complaint or enter judgment for the company on the merits of Mr. Nemo's claims. (Doc. 8).

**I.   Standards for Motions to Dismiss and Motions for Summary Judgment**

RRD asks the Court to dismiss Mr. Nemo's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) enables a defendant to

move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Pursuant to Rule 8(a)(2), a complaint must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Generally, to survive a Rule 12(b)(6) motion to dismiss and meet the requirements of Fed. R. Civ. P. 8(a)(2), "a complaint does not need detailed factual allegations, but the allegations must be enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In deciding a Rule 12(b)(6) motion to dismiss, a district court must view the allegations in a complaint in the light most favorable to the plaintiff and accept well-pleaded facts as true. *Sun Life Assurance Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018); *Little v. CRSA*, 744 Fed. Appx. 679, 681 (11th Cir. 2018).

When a defendant goes beyond the allegations of a complaint and asks a district court to enter judgment for the defendant on the basis of evidence related to the plaintiff's claims, the defendant must meet the requirements of Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a district court must enter judgment for a defendant if the defendant shows that there is no genuine dispute as to any material fact such that the defendant "is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a). Summary judgment evidence may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). When considering a defendant's motion for summary judgment, a district court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the plaintiff. *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

Because Mr. Nemo is handling his claims without a lawyer, the Court holds his complaint "to a less stringent standard" than a complaint drafted by an attorney. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (citing *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir. 1991)). In addition, the Court must consider "specific facts" that Mr. Nemo has alleged in his signed complaint, but the Court may not consider conclusory statements that lack evidentiary support. *Perry v. Thompson*, 786 F.2d 1093, 1094-95 (11th Cir. 1986); (Doc. 1, p. 3). For example, Mr. Nemo cannot simply state: "I was an RRD employee." Instead, he must describe facts that, if proven, would support a finding that, under the applicable legal standard, he was an RRD employee.

## II. The Standards for Discrimination Claims

Title VII of the Civil Rights Act of 1964 makes it unlawful:

> for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." § 2000e–2(a)(1); *see also* 78 Stat. 255.

*Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). The ADEA:

> prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

*Ashkenazi v. S. Broward Hosp. Dist.*, 607 Fed. Appx. 958, 961 (11th Cir. 2015).

Title VII and the ADEA apply to only employees. 42 U.S.C. § 2000e(f); *Ashkenazi*, 607 Fed. Appx. at 961. Title VII defines an employee as "an individual employed by an employer." 42 U.S.C. § 2000e(f). The ADEA defines an employee as "an individual employed by any employer" with the exception of certain political positions. 29 U.S.C. § 630(f). The Eleventh Circuit Court of Appeals has held that Title VII and the ADEA do not protect independent contractors from discrimination. *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 341, 342 (11th Cir. 1982) (affirming district court's use of common law analysis in concluding that Title VII plaintiff was an independent contractor and dismissing case); *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1495 n.13 (11th Cir. 1993)

("The ADEA does not provide relief for discrimination against an independent contractor.").

Under the *Cobb* test for Title VII cases, "the economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee" determine whether the relationship at issue is an employer/employee relationship or an owner/independent contractor relationship. 673 F.2d at 341. The *Cobb* test focuses on the extent to which the alleged employer "control[s] and direct[s] the work of an individual, not only as to the result to be achieved, but also as to the details by which the result is achieved ...." *Cobb*, 673 F.2d at 340 (quoting *Spirides v. Reinhardt*, 613 F.2d 826, 831-32 (D.C. Cir. 1979)) (internal marks omitted). Under the *Cobb* test, a court may consider:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Cobb*, 673 F.2d 340 (quoting *Spirides*, 613 F.2d at 832).

The Eleventh Circuit Court of Appeals has not instructed district courts to apply the *Cobb* test in ADEA cases. *Ashkenazi*, 607 Fed. Appx. at 962. Consequently, in ADEA cases, district courts must adapt other federal law tests to evaluate the nature of parties' working relationship. Those tests include the common-law agency test, the Fair Labor Standards Act (FLSA) economic realities test, and a blended or hybrid approach that combines the common-law agency test with "a consideration of the 'economic realities' of the hired party's dependence on the hiring party." *Ashkenazi*, 607 Fed. Appx. at 961.

Like the *Cobb* test, the common-law agency test focuses on the level of control that the alleged employer may exercise over an individual. *Ashkenazi*, 607 Fed. Appx. at 961. Other factors include:

> "the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

*Ashkenazi*, 607 Fed. Appx. at 961 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992)). The economic realities test "analyzes the extent to which the individual is dependent" on the alleged employer. *Ashkenazi*, 607 Fed. Appx. at 961. The "important takeaway" is that "each case is factually specific

and context dependent on the precise nature of the working relationship between the parties." *Ashkenazi*, 607 Fed. Appx. at 962.

## III. Motion to Dismiss

As noted, with respect to RRD's motion to dismiss, the Court must examine Mr. Nemo's complaint to determine whether he has alleged facts which, if proven, would support a finding that RRD was his employer. In his complaint, Mr. Nemo states that Felton Burroughs, RRD's hub supervisor, "discriminated against me during my employment with the defendant company." (Doc. 1-1, p. 1). That conclusory statement does not establish the nature of Mr. Nemo's relationship with RRD, but Mr. Nemo alleges facts which are indicative of an employer/employee relationship.

Mr. Nemo alleges that he was employed with RRD from May 8, 2017 until August 13, 2017. (Doc. 1, p. 2, ¶ 5). According to Mr. Nemo, RRD is a logistics delivery service. (Doc. 1, p. 1, ¶ 2). Mr. Nemo was a driver for the company, a company that employs more than 500 individuals. (Doc. 1, p. 2, ¶ 9). Mr. Nemo alleges that Mr. Burroughs was a "hub supervisor" for RRD. (Doc. 1, p. 2, ¶ 7; Doc. 1-1, p. 1). According to Mr. Nemo, Mr. Burroughs knew how much he (Mr. Nemo) earned, and Mr. Burroughs assigned delivery routes to Mr. Nemo and other drivers. (Doc. 1, p. 2, ¶ 9; Doc. 1-1, p. 1). Mr. Nemo asserts that Mr. Burroughs told another driver to get ready to take over the Montgomery delivery route

7

because Mr. Nemo "had to go." (Doc. 1-1, p. 1). Mr. Nemo alleges that Mr. Burroughs's boss likewise had control over delivery routes and could overrule Mr. Burroughs's decisions concerning route assignments. (Doc. 1-1, p. 1). Mr. Nemo alleges that RRD required drivers to use a "Real Time Delivery Program" on their phones. (Doc. 1-1, p. 2). Mr. Nemo asserts that Mr. Burroughs fired another driver "for opposing discrimination," and Mr. Burroughs replaced Mr. Nemo and the other driver with white drivers. (Doc. 1-1, p. 2).

For purposes of Mr. Nemo's Title VII claim, these factual allegations, if proven, are sufficient to establish that Mr. Nemo was an RRD "employee" under the *Cobb* test. Mr. Nemo has alleged that Mr. Burroughs supervised his work, furnished the program that Mr. Nemo had to use to perform his work, and selected drivers and the routes that Mr. Nemo and other drivers worked. Mr. Nemo also alleges that RRD had the power to terminate drivers. Jurors could reasonably infer that drivers are an integral part of a delivery business. Reading Mr. Nemo's allegations liberally, Mr. Nemo has identified facts that would allow him to prove that he was an employee of RRD for purposes of Title VII. With respect to Mr. Nemo's ADEA claim, these factual allegations also support a finding that Mr. Nemo was an employee of RRD under the common-law agency and economic realities tests. Therefore, the Court denies RRD's Rule 12(b)(6) motion to dismiss.

## IV. Summary Judgment

The Court also denies RRD's alternative motion for summary judgment under Rule 56. The evidence currently in the record establishes disputed issues of material fact concerning the nature of the relationship between RRD and Mr. Nemo. Those questions of fact defeat RRD's motion for summary judgment on Mr. Nemo's Title VII and ADEA claims.

As noted above, for purposes of summary judgment, the Court regards as summary judgment evidence the specific facts that Mr. Nemo has alleged in his signed complaint. Therefore, the factual allegations discussed in the analysis of RRD's motion to dismiss also apply here. Some of the evidence that Mr. Nemo submitted in opposition to RRD's motion for summary judgment substantiates Mr. Nemo's factual allegations concerning his relationship with RRD. For example, Mr. Nemo submitted a string of text messages that he and Mr. Burroughs exchanged. Some of those messages concern compensation. In one message, Mr. Nemo asked Mr. Burroughs, "would you tell me what day is payday." Mr. Burroughs replied, "15th and the last day of the month." (Doc. 23-1, p. 8). In another message, Mr. Burroughs requested Mr. Nemo's Social Security number and his address to process payments to Mr. Nemo. (Doc. 23-1, p. 11). In addition to these text messages, Mr. Nemo submitted payroll checks from RRD's home office in Tampa, Florida directed to him as payee. (Doc. 23-1, pp. 29-31).

9

Consistent with the information that Mr. Burroughs provided to Mr. Nemo via text message, the checks are dated for the 15th and last date of the months that RRD paid Mr. Nemo. (Doc. 23-1, pp. 29-31).

Other text messages concern general oversight. For example, Mr. Burroughs asked Mr. Nemo to send a picture for an ID badge. (Doc. 23-1, p. 2). In another message, Mr. Burroughs instructed Mr. Nemo to come to his office for a drug test. (Doc. 23-1, pp. 13-14). In another message, Mr. Burroughs stated: "UPS will bring check for AUBURN routes drivers need to make all deliveries." (Doc. 23-1, p. 20).

A string of messages between Mr. Burroughs and Ms. Reese, another driver, contain specific instructions for deliveries. For example, in one message, Mr. Burroughs stated, "Your drivers have to bring BB&T to my warehouse never drop at Compass again." (Doc. 23-2, p. 14).

Some of the messages that Mr. Nemo submitted support RRD's contention that Mr. Nemo was an independent contractor. For example, in a message between Mr. Nemo and an individual Mr. Nemo called Ms. Cindy, Ms. Cindy wrote: "You are an independent Contractor [sic] for RRD and I work for a different company." (Doc. 23-4, p. 5).[1]

---

[1] RRD objected to some of the evidence that Mr. Nemo submitted in opposition to RRD's motion for summary judgment. (Doc. 25) (asking the Court to strike from the evidentiary record Doc. 23-2, p. 11; Doc. 23-5, pp. 1-6; and Doc. 23-6, pp. 3-7). The Court has not considered that

In support of its contention that Mr. Nemo was an independent contractor, RRD relies heavily on its July 2016 Client Service Agreement with Subcontracting Concepts LLC ("SCI") and an Independent Contractor Acknowledgment Form. (Doc. 10-1, p. 4, ¶ 3); (Doc. 10-1, pp. 5-10) (copy of Client Service Agreement between RRD and SCI); (Doc. 10-1, p. 13) (copy of Independent Contractor Acknowledgment Form for Mr. Nemo). RRD asserts that Mr. Nemo signed the Independent Contractor Acknowledgment Form for SCI, and SCI provided the form to RRD. (Doc. 10-1, p. 4, ¶5; Doc. 10-1, p. 13). According to the independent contractor form, Mr. Nemo had to cover expenses such as fuel, and he had to provide his own equipment and tools. (Doc. 10-1, p. 13). The form states: "You will receive no supervision about how to perform agreed upon delivery services . . ." (Doc. 10-1, p. 13). RRD maintains that it decided to replace SCI with another company, Patriot Express Transportation & Logistic, for financial reasons. (Doc. 10-1, p. 15-16, ¶¶ 6-7). RRD notified SCI contractors "that they were no longer needed." (Doc. 10-1, p. 16, ¶ 7).

The agreement between RRD and SCI and the independent contractor form are relevant to the analysis of the nature of Mr. Nemo's relationship with RRD, but the documents tell only part of the story. For example, although the independent contractor form states: "You will receive no instruction about how to perform a

---

evidence in ruling on RRD's motion for summary judgment, so the Court overrules the objection as moot.

particular delivery" and "You will receive no supervision about how to perform agreed upon delivery services . . ." (Doc. 10-1, p. 13, ¶¶ 3-4), other evidence indicates that Mr. Burroughs directed the work of drivers in a variety of ways. Although the independent contractor form states that drivers must provide their own equipment and tools (Doc. 10-1, p. 13, ¶ 7), other evidence indicates that RRD provided a program that drivers had to use to make deliveries. (Doc. 1-1, p. 2). Although the independent contractor form states that drivers are paid on a per-contract basis (Doc. 10-1, p. 13, ¶ 10), Mr. Nemo has provided "payroll" checks that he received from RRD. (Doc. 23-1, pp. 29-31). Although the independent contractor form states that drivers could reject any delivery opportunity and have "no obligation to offer delivery work continually" (Doc. 10-1, p. 13, ¶¶ 6, 9), Mr. Burroughs instructed drivers that they had to make certain deliveries. (Doc. 23-1, p. 20).

These inconsistencies constitute disputed issues of fact concerning the degree of control that RRD exercised over Mr. Nemo's work. Those questions of fact prevent RRD from establishing, as a matter of law, that Mr. Nemo was an independent contractor. Consequently, the Court denies RRD's motion for summary judgment.

## IV. Conclusion

Having denied RRD's motion, the Court asks the parties to please comply with their Rule 26(f) obligations within 14 days.

**DONE** and **ORDERED** this 8th day of February, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE